## A05A1823. PEACOCK v. SPIVEY et al.
(629 SE2d 48)

BERNES, Judge.

William Peacock appeals from the Superior Court of DeKalb County's orders enforcing a settlement agreement reached by the parties during mediation and dismissing Peacock's case with prejudice. Finding no error, we affirm.

The instant appeal arises from appellant Peacock's suit alleging that employees of appellee Douglas Asphalt Company, Inc. ("DAC") spilled diesel fuel, causing damage and contamination to his property. Peacock also sued several State of Georgia employees, alleging, inter alia, that they violated the Georgia Open Records Act (OCGA § 50-18-70 et seq.) by failing to properly respond to his request for records pertaining to the alleged contamination of his property by DAC.

The parties, through their respective counsel, entered into a consent order staying discovery pending mediation. The mediation took place on July 3, 2003 and resulted in an agreement signed by Peacock, as well as counsel for the parties and the mediator. The mediation agreement provided for the "good faith cleanup of the spills" on Peacock's property within 90 days by DAC with supervision by the "appropriate governmental agency"; the payment of mediation costs by the State of Georgia and DAC; the payment of $25,000 to Peacock "as settlement in full of all claims arising out of [the] matter" by the State and DAC; and, Peacock's voluntary dismissal of "the lawsuit that is the subject of this agreement."

Appellees subsequently filed a motion to enforce the agreement, which the trial court granted over Peacock's objection. Following cleanup efforts taken by DAC pursuant to the mediation agreement, Peacock filed a motion to enforce the trial court's previous order, alleging that the cleanup had not been properly performed and supervised. The trial court denied Peacock's motion and closed the case.

On appeal, Peacock challenges the trial court's order granting appellees' motion to enforce the mediation agreement and its subsequent order denying Peacock's motion to enforce. Peacock contends that the trial court erred (1) in construing the mediation agreement to require a voluntary dismissal with prejudice of all claims; (2) in finding that Peacock entered into the mediation agreement voluntarily; (3) in appointing Dr. Albert Langley, a defendant, to supervise the cleanup and in relying on his affidavit to determine whether a good faith cleanup of the property had occurred; and (4) in failing to allow a jury trial on the issues of whether he voluntarily entered into the mediation agreement and whether the cleanup of the property complied with the trial court's order enforcing the mediation agreement. We will address each of these contentions in turn.

1. Peacock claims the trial court erroneously expanded the mediation agreement by construing it to require a dismissal with prejudice of his claims against all of the defendants. Peacock contends the agreement only required him to voluntarily dismiss DAC and the State of Georgia, not the employees of the State named individually in the lawsuit. Based on the plain language of the agreement, we disagree.

"The trial court's construction of [a] settlement agreement is a matter of law subject to de novo review." (Footnote omitted.) *Greenwald v. Kersh*, 275 Ga. App. 724, 725 (621 SE2d 465) (2005). A mediation or settlement agreement is a contract subject to the usual rules of statutory construction. *Carey v. Houston Oral Surgeons*, 265 Ga. App. 812, 815-816 (1) (595 SE2d 633) (2004). While the cardinal rule of construction is to determine the intention of the parties, no construction is required or permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation. Id.

Here, the mediation agreement provides that Peacock "will finally, forever and immediately voluntarily dismiss *the lawsuit* that is the subject of this agreement." (Emphasis supplied.) Based on the clear and unambiguous terms of the agreement, Peacock was required to dismiss "the lawsuit" in its entirety and not certain claims against particular parties.

Peacock also contends the trial court erred in construing the mediation agreement as requiring a dismissal with prejudice. We cannot agree.

> Settlement is, in and of itself, generally construed to be a final disposition of any claim against a party to settlement by a party to the settlement arising out of the subject incident, unless remaining claims are specifically reserved by any of the parties. Such compromises are upheld by

general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence.

(Footnote omitted.) *Carey*, 265 Ga. App. at 817 (1). Peacock not only failed to specifically reserve any claims in the mediation agreement, he agreed to accept payment "as settlement in full of all claims arising out of this matter" and to voluntarily dismiss the lawsuit "finally" and "forever." Thus, the trial court did not err in construing the mediation agreement as a final disposition which required Peacock to dismiss with prejudice all claims arising out of the lawsuit.

2. Peacock further contends that the trial court erred in enforcing the mediation agreement in light of his claim of duress. Specifically, Peacock contends that the trial court erred by failing to conclude that he was forced to sign the mediation agreement as a result of physical duress. Again, we disagree.

"On a motion to enforce a settlement agreement, we construe the evidence to uphold the trial court's judgment. We will not disturb a trial court's findings thereon unless clearly erroneous." (Citations and punctuation omitted.) *Griffin v. Wallace*, 260 Ga. App. 857 (581 SE2d 375) (2003). See also *Morrow v. Vineville United Methodist Church*, 227 Ga. App. 313, 317 (2) (489 SE2d 310) (1997).[1]

At the hearing on appellees' motion to enforce the mediation agreement, the trial court heard from Peacock, who asserted that he was subject to duress during the mediation because he is diabetic and his blood sugar went up, he was in severe physical pain, he was prevented from leaving the building when he wanted to terminate the negotiations, and his ex-attorney refused to let him leave the mediation session without signing the agreement. However, the trial court also heard from Peacock's ex-attorney, who contradicted Peacock's version of the mediation and testified that the conditions under which the mediation was conducted were comfortable and that Peacock "agreed to and signed off" on the mediation agreement. Based on the evidence presented, the trial court rejected Peacock's claim of duress, finding that "adequate precautions were taken to ensure the health and comfort of [Peacock], and that [Peacock] was not subject to coercion of any kind."

Construing the evidence to uphold the trial court's judgment, we conclude that the trial court did not clearly err in finding that Peacock

---

[1] The record reflects that the trial court heard live testimony and was called upon to act as the ultimate finder of fact on the duress issue. Thus, the "clearly erroneous" rather than "de novo" standard of review applies. OCGA § 9-11-52 (a). Compare *Griffin*, 260 Ga. App. at 857, n. 1, and *Morrow*, 227 Ga. App. at 317 (2), with *Greenwald v. Kersh*, supra at 726, n. 3, and *Craig v. Holsey*, 264 Ga. App. 344, 345-346 (2) (590 SE2d 742) (2003).

voluntarily signed the mediation agreement. The trial court, sitting in its role as factfinder, was entitled to credit the testimony of Peacock's ex-attorney and reject any conflicting testimony presented by Peacock himself. See, e.g., *In the Interest of C. S.*, 275 Ga. App. 562, 565 (1) (621 SE2d 483) (2005). Accordingly, we affirm the trial court's conclusion that the mediation agreement was entered into voluntarily and, therefore, was enforceable.

3. Peacock also argues that because Dr. Albert Langley was a named defendant in the lawsuit, the trial court erred in appointing him to supervise the cleanup of the property and in relying upon his affidavit to later determine whether the cleanup had been performed in good faith as required by the mediation agreement. We conclude that Peacock has waived his argument.

The mediation agreement provided that DAC's "cleanup [would] be supervised in good faith by the appropriate governmental agency." To enforce this provision, the trial court ordered Dr. Langley to supervise the cleanup. Dr. Langley, a program manager with the Georgia Environmental Protection Division, had supervised hundreds of cleanups, including many oil spills, pursuant to Georgia's environmental-protection-related statutes. His experience and expert qualifications have not been challenged.

The trial court's order enforcing the mediation agreement and appointing Dr. Langley to supervise the cleanup was issued on March 4, 2004. The cleanup thereafter took place under Dr. Langley's supervision on April 12, 2004 and on May 29, 2004. Peacock made no objection to Dr. Langley's alleged disqualification until October 11, 2004, nearly five months after the cleanup and after the filing of Dr. Langley's affidavit discussing the cleanup.

"[A] motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion. A failure to make a reasonably prompt motion to disqualify may result in the conflict being waived." (Citations and punctuation omitted.) *Head v. CSX Transp.*, 259 Ga. App. 396, 398 (577 SE2d 12) (2003); *Ga. Baptist Health Care System v. Hanafi*, 253 Ga. App. 540, 541-542 (559 SE2d 746) (2002). See also *Miller v. State*, 233 Ga. App. 814 (1) (506 SE2d 136) (1998); *Jackson v. State*, 146 Ga. App. 736 (2) (247 SE2d 512) (1978). "A party is not allowed to remain silent regarding an objection or grounds for error and gamble on a favorable [outcome], expecting that he can raise such objection later. . . . Such tactics result in the alleged error being waived." (Citations omitted.) *Head*, 259 Ga. App. at 397-398. "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal." (Citation and punctuation omitted.) *Miller*, 233 Ga. App. at 815 (1).

As the facts recited above demonstrate, Peacock failed to timely object or file a motion to disqualify Dr. Langley. Therefore, we conclude that Peacock has waived his claim that Dr. Langley should have been disqualified from supervising the cleanup and his claim that the trial court should not have considered Dr. Langley's affidavit.[2]

4. Finally, Peacock claims that the trial court erred in failing to allow a jury trial on the issues of whether he was subject to duress in entering into the mediation agreement and whether the cleanup of his property was performed in good faith. We disagree.

On November 17, 2003, Peacock filed a "Response and Counter Motion" to his former attorney's motion to tender settlement proceeds into the trial court registry, along with a supporting affidavit in which he alleged that he had been subject to duress during the mediation proceedings. In his "Response and Counter Motion," Peacock alleged, among other things, that no settlement had been reached in the case, and he demanded "an evidentiary hearing on all issues."[3] The trial court subsequently set the motion down for hearing. Thereafter, appellees filed their motion to enforce the mediation agreement and requested that their motion be heard as part of the previously scheduled hearing. In his response brief, Peacock did not object to holding a combined hearing on the motions. The trial court thereafter conducted the combined hearing. After the hearing had commenced, Peacock for the first time demanded that the factual issues pertaining to the mediation be resolved by jury trial rather than at the hearing.

Under these circumstances, we conclude that Peacock waived his right to demand a jury trial on the issue of duress. Pretermitting whether he would have been entitled to a jury trial,[4] Peacock will not now be heard to complain since he himself requested the evidentiary hearing before the trial court and did not demand a jury trial until

---

[2] Contrary to assertions made in Peacock's brief, the trial court did not abdicate its authority and allow Dr. Langley to act as a judge in the case. The record reflects that the trial court made an independent determination based on its review and consideration of all the evidence presented, including Peacock's videotape of the cleanup.

[3] Peacock clearly understood the difference between an "evidentiary hearing" and a trial by jury, as evidenced by the fact that later in the case he filed a motion for "jury trial of all facts" on his own motion to enforce the trial court's order.

[4] Compare *Griffin*, 260 Ga. App. 857 (factual issues pertaining to motion to enforce settlement agreement resolved by trial court after evidentiary hearing), *Ligon v. Bartis*, 243 Ga. App. 328 (530 SE2d 773) (2000) (trial court conducted evidentiary hearing to resolve motion to enforce settlement agreement), and *Morrow*, 227 Ga. App. at 317 (2) (trial court entered findings of fact after bench trial on motion to enforce settlement agreement), with *Devereaux v. C & S Nat. Bank*, 172 Ga. App. 53 (322 SE2d 310) (1984) (reversing trial court and holding that issue of whether attorney had apparent authority to settle case involved factual questions that should have been submitted to a jury).

after that hearing had commenced. See *Griffeth v. Griffin*, 245 Ga. App. 619 (538 SE2d 521) (2000) (when parties requested to have case heard before special master, but then party demanded jury trial after hearing had begun, the demand was untimely and was properly denied). See also *Thrash v. Rahn*, 249 Ga. App. 351, 352 (2) (547 SE2d 694) (2001) ("A party will not be heard to complain of error induced by his own conduct, nor to complain of errors expressly invited by him. . . .") (citation, punctuation and footnote omitted).

Peacock also argues that the issue of whether the cleanup of his property was performed in good faith should have been resolved by a jury. Significantly, however, the good faith issue arose within the context of Peacock's motion to enforce the trial court's order, in which he alleged that the cleanup previously ordered by the trial court had not been properly performed. Given this procedural posture, Peacock's motion was analogous to a motion for contempt predicated on appellees' alleged failure to obey the trial court's previous order. The right to a jury trial does not extend to special summary proceedings, including show cause hearings where the issue is whether a party should be held in civil contempt for violation of a previously issued injunction or order. See *Bennett v. Bagwell & Stewart, Inc.*, 216 Ga. 290, 295-296 (2) (116 SE2d 288) (1960); *Hortman v. Ga. Bd. of Dental Examiners*, 214 Ga. 560, 563 (1) (105 SE2d 732) (1958). Compare OCGA § 15-1-4 (b). Thus, the trial court did not err in failing to submit the issue to a jury.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED MARCH 22, 2006.

*William F. Rucker*, for appellant.

*Thurbert E. Baker, Attorney General, John E. Hennelly, James D. Coots, Assistant Attorneys General, LaMalva, Read & Oeland, Theresa K. Read*, for appellees.