**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, P. J., and SELF, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 4, 2017**

# In the Court of Appeals of Georgia

A16A1437. ZELDA ENTERPRISES, LLLP et al. v. GUARINO et al.

DILLARD, Chief Judge.

Zelda Enterprises, LLLP, Tony Lamar McCall, and Gene Arlon McCall, Sr. ("appellants") appeal from the trial court's grant of a motion to disqualify counsel, which was filed by Tracy McCall Guarino, Angie McCall Sumpter, and Charles Wesley McCall, Jr. ("appellees") in the underlying action between the parties. The appellants argue that the trial court committed reversible error in granting the motion by (1) applying Rule 1.6 and Rule 1.7 (c) (2) of the Rules of Professional Conduct to find that there was a conflict of interest between the appellants' counsel and the appellees; (2) failing to assess whether the appellees waived the opportunity to move

for disqualification of counsel; (3) failing to consider the harm that the appellants would suffer by the disqualification of counsel; and (4) adopting the facts as presented by the appellees' proposed order, and admitting evidence that was presented in the context of a proposed settlement. Because the trial court failed to first assess whether the appellees waived the opportunity to move for disqualification of counsel before granting the motion, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

This Court attempted to transfer this case to the Supreme Court of Georgia consistent with what was, at the time, that court's jurisdiction over cases in equity.[1] But our Supreme Court determined that jurisdiction was more properly in this Court

---

[1] *See* GA. CONST. Art. VI, § VI, ¶ III (providing that, unless otherwise provided by law, the Supreme Court of Georgia has appellate jurisdiction over "[a]ll equity cases"); *Jackson v. J. C. Penney Co.*, 521 FSupp. 1032, 1034 (N.D. Ga. 1981) (explaining that the disqualification of counsel is "an equitable, not a legal, matter"). *But see* OCGA § 15-3-3.1 (a) (2) (providing for appellate jurisdiction in the Georgia Court of Appeals over "[a]ll equity cases, except those cases concerning proceedings in which a sentence of death was imposed or could be imposed and those cases concerning the execution of a sentence of death"); 2016 Ga. Laws, Act 626, § 6–1 (providing that OCGA § 15-3-3.1 would become effective January 1, 2017).

and returned the case.[2] And on the question of jurisdiction, at the outset, we reject the appellees' assertion that we lack jurisdiction to consider this appeal because the appellants obtained a certificate of immediate review *ex parte* when the appellees did not receive a copy of the proposed certificate until *after* receiving the signed certificate. The appellees provide no citation to authority in support of their contention that this occurrence deprives us of jurisdiction.[3] Furthermore, the appellees

---

[2] *See* Order in Case No. S17A0748 (Ga. Jan. 17, 2017) (finding that our Supreme Court did not have exclusive jurisdiction over appeal because it had "never held that appeals from motions to disqualify opposing counsel invoke its appellate jurisdiction over equity cases" and because "appeals challenging the trial court's application of the doctrines of laches do not invoke its jurisdiction").

[3] *See* Court of Appeals Rule 25 (b) (2) ("Part Two [of appellee's brief] shall contain appellee's argument and the citation of authorities as to each enumeration of error. It shall also include the standard of review if different from that contended by the appellant."); Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

did not file a separate motion to dismiss.[4] Given these particular deficiencies, we decline to dismiss this appeal for any alleged lack of jurisdiction.

Turning to the issues on appeal, in July 2012, some of the appellees met with Richard Calhoun of Gregory, Doyle, Calhoun & Rogers ("GDCR"), formerly Brock, Clay, Calhoun & Rogers, to discuss responding to a demand letter that they had received from the appellants' now-former counsel, Sams, Larkins & Huff. The letter concerned distribution of property and corporate assets between numerous family members following a death. And in order to assist Calhoun, the appellees provided a detailed memorandum that assessed the requests and allegations of the demand letter and provided insight into their positions, paragraph by paragraph. Calhoun then

---

[4] *See* Court of Appeals Rule 41 (b) ("All motions and responses to motions shall be filed as separate documents, and not as joint, compound, or alternative motions. No motions or responses to motions shall be filed in the body of briefs, applications, or responses to applications. Motions and responses shall be prepared in accordance with Rule 24, Preparation of Briefs. Parties may cite to the record, but shall not attach any document to the motion or response. This prohibition does not apply to Rule 40 (b) motions that may contain attachments. Failure to comply with this rule may result in non-consideration of the motion or responses."); Court of Appeals Rule 41 (d) ("Notice of a motion to dismiss and the grounds thereof shall be given in writing to counsel for the appellant by service made and shown as required in Rule 6, Copies and Certificate of Service. If notice cannot be given, the motion shall be entertained and the Court in its discretion shall give direction as it deems proper. If the Court determines that it has no jurisdiction over a pending appeal, the appeal shall be dismissed or transferred to the Supreme Court.").

forwarded these items to his associate, Michael Goode, on August 2, 2012. Thereafter, according to emails exchanged between Goode and Calhoun, dated August 6 and August 7, 2012, Goode began looking into the matters raised by the demand letter.[5] Additionally, Calhoun contacted the appellants' former counsel to request an extension of time in which to respond to the letter, informed the appellees of same on August 7, and notified them that Goode would call them to gather more information to formulate a response to the letter.

On August 9, 2012, the appellees informed Calhoun via email that they had decided not to retain GDCR to represent them in the matter, and they subsequently retained Tim Bailey as counsel. At some point after the appellees informed Calhoun/GDCR that they would not be retaining the firm, Melissa Gilbert, another attorney at GDCR, began representing the appellants in the underlying action. And on February 28, 2013, Michael Goode sent a letter to Bailey to inform him of the firm's representation of the appellants and make certain demands. This letter addressed issues with some of the same property and corporate assets that were the

---

[5] An email from family members to Calhoun on August 4 referenced a telephone call with Calhoun and "the other attorney" that had taken place the day before, August 3, "to discuss the [demand] letter." The email requested that Calhoun call again and that he provide "notice of the time of day that [he] or Michael" would do so.

subject of the earlier demand letter from Sams, Larkins & Huff, and which issues form the substance of a dispute in the underlying litigation now between the parties. Thereafter, written communication about these matters was ongoing between Bailey and Goode. But ultimately, in September 2014, Bailey filed a petition on behalf of the appellees, seeking equitable relief and damages.

In September 2015, the appellees discontinued their representation by Bailey and retained their current counsel, Moore, Ingram, Johnson & Steele ("MIJS"). MIJS claims that the firm became aware of the appellees' prior consultation with GDCR when reference was made to such consultation in a proposed-settlement letter from the appellants, seeking a waiver of any alleged conflict. Thus, MIJS requested and received a copy of the file that GDCR opened upon consulting with the appellees in 2012, and MIJS then moved to disqualify GDCR from representing the appellants. GDCR asserted in response that no objectionable conflict existed regarding the 2012 consultation with the appellees and that MIJS was moving for disqualification at the last minute as a means of tactical delay.

After hearing oral argument on the motion for disqualification, the trial court granted it. The appellants then sought and were granted a certificate of immediate review, and this Court granted their application for interlocutory appeal, which follows.

The appellants make numerous arguments as to why the trial court erred in granting the motion to disqualify counsel, as discussed *supra*, but because we agree that the trial court should have assessed the issue of whether there was a waiver of the opportunity to *move* for disqualification before granting the motion, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

First, we recognize that the right to counsel is "an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution."[6] Indeed, disqualification has "an immediate adverse effect on the client by separating him from counsel of his choice," which inevitably causes delay.[7] Furthermore, when an attorney is disqualified, the client "may suffer the loss of time

---

[6] *Bernocchi v. Forcucci*, 279 Ga. 460, 462 (2) (614 SE2d 775) (2005) (punctuation omitted); *accord Blumenfeld v. Borenstein*, 247 Ga. 406, 408 (276 SE2d 607) (1981).

[7] *Bernocchi*, 279 Ga. at 462 (2) (punctuation omitted); *accord Wellstar Health Sys., Inc. v. Kemp*, 324 Ga. App. 629, 634 (1) (b) (751 SE2d 445) (2013); *Clough v. Richelo*, 274 Ga. App. 129, 132 (1) (616 SE2d 888) (2005).

7

and money in finding new counsel and may lose the benefit of its longtime counsel's specialized knowledge of its operations."[8] Thus, because of "the right involved and the hardships brought about, disqualification of chosen counsel should be seen as an extraordinary remedy and should be granted sparingly."[9] We review a court's decision on a motion to disqualify counsel for an abuse of discretion.[10]

Because of the importance of the right to counsel and the hardships that ensue in the event of disqualification, we have previously held that motions to disqualify should be "made with reasonable promptness after a party discovers the facts which lead to the motion."[11] The failure to make a "reasonably prompt" motion to disqualify counsel can result in waiver.[12] In considering if a waiver to file a motion to disqualify

[8] *Bernocchi*, 279 Ga. at 462 (2) (punctuation omitted).

[9] *Id.*

[10] *E.g.*, *WellStar Health Sys.*, 324 Ga. App. at 634 (1) (b); *Clough*, 274 Ga. App. at 132 (1).

[11] *Ga. Baptist Health Care Sys., Inc. v. Hanafi*, 253 Ga. App. 540, 541 (559 SE2d 746) (2002) (punctuation omitted) (quoting *Jackson*, 521 FSupp at 1034)); *accord Befekadu v. Addis. Intern. Money Transfer, LLC*, 332 Ga. App. 103, 105-06 (1) (b) (772 SE2d 785) (2015); *Resigno v. Vesali*, 306 Ga. App. 610, 613 (1) (703 SE2d 65) (2010); *Yates v. Dublin Sir Shop, Inc.*, 260 Ga. App. 369, 372 (2) (579 SE2d 796) (2003).

[12] *Befekadu*, 332 Ga. App. at 105-06 (1); *Resigno*, 306 Ga. App. at 613 (1); *Yates*, 260 Ga. App. at 372 (2); *Hanafi*, 253 Ga. App. at 541; *see Conley v. Arnold*,

has occurred, the trial court must consider four factors: (1) the length of the delay in light of the circumstances of the case, including when the movant learned of the conflict; (2) whether the movant had counsel during the delay; (3) the cause of the delay; and (4) whether disqualification would cause prejudice to the nonmoving party.[13] Additionally, the court must "weigh these factors against the seriousness of the conflict alleged and the extent to which the public's confidence in the administration of justice would be eroded if the motion was denied."[14]

---

93 Ga. 823, 824 (1894) (refusing to set aside verdict, notwithstanding attorney's improper involvement with case due to conflict of interest, when party moved for disqualification only after return of the jury's verdict); *Allen v. State*, 150 Ga. App. 109, 110 (2) (257 SE2d 5) (1979) (holding that objection to appointment of special prosecutor was made too late when made for the first time in amendment to motion for new trial); *see also Lane v. State*, 238 Ga. 407, 409 (4) (233 SE2d 375) (1977) ("The rule of disqualification of counsel who had prosecuted two defendants as solicitor general to represent them in a civil action growing out of the same incident was stated in *Conley v. Arnold* . . . . In that case no objection was made at the trial and it was held that the objection after verdict was too late." (citation omitted)).

[13] *Resigno*, 306 Ga. App. at 613 (1); *Head v. CSX Transp., Inc.*, 259 Ga. App. 396, 398 (577 SE2d 12) (2003); *Hanafi*, 253 Ga. App. at 541.

[14] *Hanafi*, 253 Ga. App. at 542 (citing *In re Corrugated Container Antitrust Litigation v. Alton Box Bd. Co.*, 659 F2d 1341, 1348-49 (5th Cir.1981)); *accord Head*, 259 Ga. App. at 398.

Here, before concluding that the appellants' counsel should be disqualified, the trial court did not first consider whether the appellees waived the opportunity to move for disqualification, despite the appellants arguing below that the appellees had indeed waived the opportunity to move for disqualification by failing to do so in a reasonably prompt amount of time.[15] And without findings of fact and conclusions of

---

[15] Although the trial court concluded that the conflict was "not waivable," it did so applying the Rules of Professional Conduct (*i.e.*, the trial court concluded that appellees could not have consented to waiver of a conflict of interest under Rule 1.7 (c)). *See* Rules of Professional Conduct R. 1.7 (c) ("Client informed consent [waiving a conflict of interest] is not permissible if the representation: (1) is prohibited by law or these Rules; (2) includes the assertion of a claim by one client against another client represented by the lawyer in the same or substantially related proceeding; or (3) involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients."). But the trial court did not consider our cases concerning waiver of the *opportunity* to move for disqualification. *See supra* note 11 & accompanying text. Indeed, although our cases speak in terms of waiving the conflict of interest, it is clear that what we mean is the waiver of the right to move for disqualification due to the alleged conflict of interest. *See generally Jackson*, 521 FSupp at 1033 ("Before reaching the merits of the defendant's motion [for disqualification of counsel], however, the court must first determine whether the defendant has essentially waived its right to obtain disqualification because of its failure to raise the issue while the case was pending in the state court of Tennessee. A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion."), *relied upon by Hanafi*, 253 Ga. App. at 541; *Jaskula v. Dybka*, No. 1–16–0014, 2017 WL 1103415, at * (Ill. App. Ct. Mar. 23, 2017) ("[C]ourts have determined that a party waives any *objection* to an alleged attorney conflict by failing to promptly assert the issue." (emphasis supplied)).

10

law on this potentially dispositive question,[16] we cannot determine whether the trial court abused its discretion in granting the motion to disqualify.[17] Accordingly, we vacate the order of disqualification and remand to the trial court for it to conduct the waiver analysis discussed *supra*.[18]

*Judgment vacated and case remanded with direction. Ray, P. J., and Self, J., concur.*

---

[16] *Cf. Wakefield v. Stevens*, 249 Ga. 254, 255 (290 SE2d 58) (1982) (explaining that the timeliness of motion to recuse judge was dispositive issue in case).

[17] *See Shuttleworth v. Rankin-Shuttleworth of Ga., LLC*, 328 Ga. App. 593, 596 (1) (b) (759 SE2d 873) (2013) (physical precedent only as to Div. 1 (b)) (holding, after assessing the four factors relevant to waiver of opportunity to move for disqualification and acknowledging that "*the trial court* must weigh these factors," that trial court did not abuse its discretion in granting motion to disqualify (emphasis added)).

[18] *See Befekadu*, 332 Ga. App. at 105-06 (1) (b) (vacating order of disqualification and remanding for consideration under the appropriate standard, including whether the failure to raise the issue with reasonable promptness resulted in waiver). We express no opinion as to the appropriateness of the trial court's ruling on the substantive issue of disqualification.