**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 8, 2021**

# In the Court of Appeals of Georgia

A21A0823. ALEXANDER LAW FIRM, P.C. v. RICHBURG.

MILLER, Presiding Judge.

In this legal malpractice dispute between Alexander Law Firm, P.C. ("the Law Firm") and its former client, Curtis Richburg, the Law Firm appeals from the jury's verdict and the trial court's order denying its motion for judgment notwithstanding the verdict and its motion for new trial. On appeal, the Law Firm argues that (1) the trial court erred by denying its motion to disqualify Richburg's attorneys; (2) the trial court erred by denying its motion for partial summary judgment; and (3) the trial court erred by denying its motion for directed verdict and its motion for judgment notwithstanding the verdict on Richburg's counterclaim for conversion. For the reasons that follow, we affirm.

In reviewing a verdict after the denial of a motion for new trial, we follow well-established principles. Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of the motion for new trial will not be disturbed.

(Citation omitted.) *Golden Isle Cruise Lines, Inc. v. Lowie*, 350 Ga. App. 1, 1-2 (827 SE2d 703) (2019).

The record shows that Richburg hired the Law Firm to help his brother, James Richburg, recover money and personal property that was allegedly stolen by James' son and daughter-in-law, Chandler and Marquita Richburg. The relationship between Richburg, James, and the Law Firm later deteriorated, and Richburg eventually terminated the Law Firm's representation in the matter concerning James, which led to the instant suit.

The Law Firm filed a complaint against Richburg, asserting claims for tortious interference with contractual relations and breach of fiduciary duty, and it requested attorney fees, punitive damages, a temporary restraining order, an injunction, and an

2

accounting. Richburg answered the complaint and asserted counterclaims for breach of contract, breach of fiduciary duty, trespass, intentional infliction of emotional distress, punitive damages, conversion, and attorney fees. The Law Firm filed two motions for partial summary judgment on a claim to recover unpaid legal fees, which the trial court denied. The Law Firm also filed a motion to disqualify Richburg's attorneys, which the trial court denied, and the case proceeded to a jury trial.

At trial, the evidence showed that, in July 2018, Richburg drove from his home in New Jersey to visit with James, who suffers from dementia, at James' home in Conyers, Georgia. Upon arriving at the home, Richburg discovered that the home was vacant, and he questioned James' neighbor regarding James' whereabouts. The neighbor told Richburg that, according to Chandler, James had purchased a new home, and James was renting out the Conyers residence. Richburg later discovered that money was missing from James' bank account, that Chandler and Marquita were living in a new home that was listed in James' name, and that James' belongings were at a storage facility. Shortly thereafter, Richburg hired the Law Firm to represent James regarding the theft and fraud committed by Chandler and Marquita. On July 31, 2018, the Law Firm executed a form that designated Richburg as the holder of power of attorney and revoked Chandler and Marquita's power of attorney. The form

3

also granted Richburg "unrestricted access to, and the right to enter into, any . . . storage warehouse or other depository . . . in which any property may be held for [James]."

James began living with Richburg in August 2018, and the Law Firm filed suit against Chandler and Marquita. In October 2018, the Law Firm elected to pay the monthly fee for the storage unit that contained James' property, and it obtained control over the unit. At some point thereafter, the relationship between the Law Firm, Richburg, and James deteriorated, and the Law Firm was unable to communicate with James and Richburg. According to the Law Firm, Richburg owed approximately $7,000 in unpaid legal fees as of December 1, 2018. In a letter dated March 19, 2019, Richburg and James informed the Law Firm that they were terminating the firm's representation, and they requested that the firm cease its attempts to contact them. Richburg and James, through their new counsel, requested that the Law Firm provide access to the storage unit to retrieve James' property. The Law Firm acknowledged having received the requests for access to the storage unit, but it wanted to speak with James before agreeing to the requests.

On February 17, 2020, Harold Alexander, the owner of the Law Firm, flew to Richburg's home in New Jersey. Alexander, who was aware that he did not have

4

permission to be at the home, saw James seated in the front passenger seat of a vehicle and attempted to speak with James. Richburg, who was seated in the driver's seat of the vehicle, testified that Alexander walked onto his driveway and began yelling at him, at which point he drove away to avoid a confrontation with Alexander. Surveillance footage obtained from security cameras at Richburg's home also showed Alexander walking with a flashlight along the property while taking photographs or video footage of the home.

Following the trial, the jury returned a verdict in the Law Firm's favor on Richburg's breach of contract and punitive damages claims, but it found in favor of Richburg on his claims for trespass, conversion, and breach of fiduciary duty, and it also determined that Richburg was not responsible for unpaid legal fees.[1] The trial court later entered judgment on the jury's verdict, and the Law Firm subsequently filed a motion for judgment notwithstanding the verdict, or alternatively, a motion for new trial. The trial court later denied the Law Firm's motion, and the Law Firm appealed.

---

[1] The jury also found that the contents of the storage unit should be returned to Richburg, but it otherwise awarded him nominal damages on his successful claims.

1. First, the Law Firm argues that the trial court erred by denying its motion to disqualify Richburg's attorneys from representing Richburg in this matter because his attorneys impermissibly communicated with James in violation of the Georgia Rules of Professional Conduct. We conclude that the Law Firm has failed to show that the trial court erred in this regard.

"We review a court's decision on a motion to disqualify counsel for an abuse of discretion." *Zelda Enterprises, LLLP v. Guarino*, 343 Ga. App. 250, 253 (806 SE2d 211) (2017). In reviewing such decisions,

> we recognize that the right to counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution. Indeed, disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, which inevitably causes delay. Furthermore, when an attorney is disqualified, the client may suffer the loss of time and money in finding new counsel and may lose the benefit of its longtime counsel's specialized knowledge of its operations. Thus, because of the right involved and the hardships brought about, disqualification of chosen counsel should be seen as an extraordinary remedy and should be granted sparingly.

(Citations and punctuation omitted.) Id. at 252-253.

6

Rule 4.2 (a) of the Georgia Rules of Professional Conduct provides: "[a] lawyer who is representing a client in a matter shall not communicate *about the subject of the representation* with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order." (Emphasis supplied.) This rule "applies to communications with any person, whether or not a party to a formal adjudicative proceeding, contract or negotiation, who is represented by counsel concerning the matter to which the communication relates." Rule 4.2 of the Georgia Rules of Professional Conduct, Comment 3. Notably, however, the rule does not prohibit *all* communication with a represented person. Specifically, Comment 1 of Rule 4.2 expressly states that

> [t]his Rule does not prohibit communication with a represented person, or an employee or agent of such a person, concerning matters outside the representation. For example, the existence of a controversy between a government entity and a private party, or between two organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter.

Here, although James is not a party to this action, the record shows that, at the time of trial, Alexander was still listed as James' counsel of record in the civil suit

7

against James' son and daughter-in-law. As acknowledged by Richburg, Richburg's current counsel met and spoke with James at Richburg's home on one occasion while the action was pending below. Although Richburg's counsel informed the trial court that he met and spoke with James, there is nothing in the record to show the nature of the communication.

We conclude that the Law Firm has failed to show that the communication between James and Richburg's current counsel was related to the scope of counsel's current representation under Rule 4.2 (a) of the Georgia Rules of Professional Conduct. See *Ligon v. Lumpkin County*, 261 Ga. App. 435 (582 SE2d 504) (2003) ("On appeal, the burden is on the appealing party to show error affirmatively by the record. When that burden is not met, the judgment in issue is assumed to be correct and must be affirmed.") (citations omitted). The record merely shows that Richburg's attorney met and spoke with James and determined that James was lucid and that he was not being held against his will. The communication does not reveal, however, that the conversation between James and Richburg's counsel pertained to the subject matter of the instant lawsuit or any other matter related to counsel's current representation as required for a violation of Rule 4.2 (a). See *Sanifill of Ga., Inc. v. Roberts*, 232 Ga. App. 510, 511 (502 SE2d 343) (1998) ("This rule is designed to

8

protect a represented party's right to effective representation of counsel by preventing adverse counsel from taking advantage of such party through undisclosed contact.").

Although the Law Firm relies upon our prior decision in *Clos v. Pugia*, 204 Ga. App. 843 (420 SE2d 774) (1992), to support its claim that Richburg's counsel violated Rule 4.2 (a), *Clos* is factually distinguishable from the instant case. In *Clos*, the appellee and her husband were being represented by the same counsel in a civil against the defendant for injuries resulting from a traffic accident. Id. at 843-844 (1). After the appellee and her husband divorced, the defendant's counsel contacted the husband, and the husband told the defendant's counsel that the appellee's injuries pre-existed the accident. Id. at 844 (1). In holding that the trial court properly granted the appellee's motion to disqualify the defendant's counsel, we reasoned that "the ex parte communication was . . . a specifically identifiable impropriety[.]" Id. Here, however, the record does not reveal what exactly was discussed between James and Richburg, which is fatal to the Law Firm's claim. Because the Law Firm has failed to show that the communication between James and Richburg's counsel was the type of communication contemplated by Rule 4.2 (a) of the Georgia Rules of Professional

9

Conduct, the Law Firm has failed to show that the trial court abused its discretion by denying its motion to disqualify Richburg's counsel.[2]

2. Next, the Law Firm argues that the trial court erred by denying its motion for partial summary judgment. We conclude, however, that this claim is moot.

> [I]t is well settled that after verdict and judgment, it is too late to review a judgment denying a summary judgment because that judgment becomes moot when the court reviews the evidence upon the trial of the case. The only exception to the rule is that if the legal issues raised and resolved in denying the motion for summary judgment were not considered at trial, then the denial of the motion is not rendered moot by the verdict and judgment.

(Citations and punctuation omitted.) *AgSouth Farm Credit, ACA v. Gowen Timber Co., Inc.*, 336 Ga. App. 581, 586 (1) (784 SE2d 913) (2016).

Here, prior to trial, the Law Firm filed a partial motion for summary judgment on its claim for unpaid legal fees, which the trial court denied. The case proceeded to trial where the issue concerning the unpaid legal fees was placed before the jury. The jury ultimately found that the Law Firm was not entitled to recover the unpaid fees, and the trial court later entered judgment on the verdict. Because the legal issue

---

[2] For these same reasons, we also deny the Law Firm's motion to disqualify Richburg's counsel from representing him in this appeal.

10

raised and resolved in the partial motion for summary judgment was considered at trial, the issue as to whether the trial court erred in denying the motion is moot. See *AgSouth Farm Credit, ACA*, supra, 336 Ga. App. at 586 (1) (holding that the issue concerning the trial court's denial of a motion for summary judgment was moot because the issue raised in the motion for summary judgment was presented to the jury and the trial court later entered judgment on the jury's verdict on the issue).

3. Lastly, the Law Firm further argues that the trial court erred by denying its motion for a directed verdict and its motion for judgment notwithstanding the verdict on Richburg's conversion claim because he did not own the property at issue. We disagree and conclude that the trial court did not err by denying these motions.[3]

---

[3] We reject Richburg's claim that we lack jurisdiction to review the denial of the Law Firm's motion for judgment notwithstanding the verdict and motion for new trial because the motions were untimely. The trial court entered the final judgment on March 17, 2020, after the Supreme Court of Georgia issued its first Statewide Judicial Emergency Order suspending all final deadlines due to the COVID-19 pandemic. The Law Firm filed a joint motion on June 29, 2020, prior to the Supreme Court of Georgia's Statewide Judicial Emergency Order that reimposed deadlines on all litigants on July 14, 2020, and it is well settled that a motion for new trial may be amended at any time before a ruling on the motion. OCGA § 5-5-40 (b). To the extent that Richburg argues that the motion did not sufficiently inform him of its contentions, the Law Firm later filed a supplemented motion which set out in detail its arguments for reversal. Accordingly, Richburg's claim is wholly meritless. See *Hiers-Wright Assoc., Inc. v. Mfg. Hanover Mortg. Corp.*, 182 Ga. App. 732 (1) (356 SE2d 903) (1987) (rejecting the appellant's claim that the trial court erred by considering the motion for judgment notwithstanding the verdict because it did not

11

On appeal from a trial court's rulings on motions for directed verdict and j.n.o.v., we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; directed verdicts and judgments n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

(Citation omitted.) *Lou Robustelli Mktg. Svcs., Inc., v. Robustelli*, 286 Ga. App. 816, 816-817 (650 SE2d 326) (2007).

Conversion involves an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to [his] rights. The very essence of conversion is that the act of dominion is wrongfully asserted. Thus, if a party has a right to assert ownership, the act of dominion is not wrongful and does not constitute conversion. To establish a prima facie case for conversion, the plaintiff must show title to the property in the plaintiff, possession by the defendant, demand for possession, and refusal to surrender the property, or an actual conversion prior to the filing of the suit. *A plaintiff in a conversion action need not show he is absolute owner of the converted property; he only need show a right of action or possession in the property. 'Right of possession' means either actual possession or the right to immediate possession of the property.* Further, the right to

_____

sufficiently state the contentions upon which the motion was based, where the motion was later supplemented by a brief that detailed the grounds of the motion).

12

immediate possession must be absolute, unconditional, and exist at the time the action is commenced.

(Citations and punctuation omitted; emphasis supplied.) *Habel v. Tavormina*, 266 Ga. App. 613, 615 (1) (597 SE2d 645) (2004).

Here, the evidence at trial showed that James' belongings were being kept at a storage facility. On July 31, 2018, the Law Firm executed a power of attorney form on James' behalf, which designated Richburg as the holder of power of attorney for James and granted Richburg "unrestricted access to, and the right to enter into, any . . . storage warehouse or other depository . . . in which any property may be held for [James]." In October 2018, the Law Firm elected to pay the monthly fee for the storage unit and obtained control over the unit. Richburg asked Alexander on numerous occasions for access to the storage unit to retrieve James' belongings, but Alexander refused to allow him to access the storage unit. Alexander acknowledged that he did not allow Richburg access to the storage unit. Because the evidence showed that Richburg had an immediate right to possess James' property as reflected in the power of attorney, the Law Firm exercised control over James' property, Richburg made demands for possession of James' property, and the Law Firm refused to allow Richburg to retrieve James' property, we conclude that this evidence was

13

sufficient to sustain the jury's verdict on the conversion claim and that the evidence did not demand a verdict in the Law Firm's favor. See *Lou Robustelli Mktg. Svcs., Inc.*, supra, 286 Ga. App. at 819-820 (3) (a) (holding that the trial court properly denied motion for judgment notwithstanding the verdict where the evidence was sufficient to sustain the jury's verdict on the conversion claim); *Efstathiou v. Reiss*, 227 Ga. App. 735, 736 (1) (b) (490 SE2d 426) (1997) (holding that the trial court did not err by denying a motion for directed verdict where the evidence did not demand a verdict in the moving party's favor).

Accordingly, for the reasons stated above, we affirm the jury's verdict and the trial court's denial of the Law Firm's motion for judgment notwithstanding the verdict and the motion for new trial.

*Judgment affirmed. Hodges and Pipkin, JJ., concur*.

14